1  JOHN J. BINGHAM, JR. (State Bar No. 075842)
   *JBingham@dgdk.com*
2  JOHN N. TEDFORD, IV (State Bar No. 205537)
   *JTedford@dgdk.com*
3  JULIA W. BRAND (State Bar No. 121760)
   *JBrand@dgdk.com*
4  ENID COLSON (State Bar No. 189912)
   *EColson@dgdk.com*
5  DANNING, GILL, DIAMOND & KOLLITZ, LLP
   2029 Century Park East, Third Floor
6  Los Angeles, California 90067-2904
   Telephone:  (310) 277-0077
7  Facsimile:  (310) 277-5735

8  Attorneys for Debtor and Debtor-in-Possession
   Meruelo Maddux - 845 S. Flower Street, LLC and
9  Meruelo Chinatown, LLC

10

       **UNITED STATES BANKRUPTCY COURT**
11
       **CENTRAL DISTRICT OF CALIFORNIA**
12
       **SAN FERNANDO VALLEY DIVISION**
13

14  In re                                ) Case No. 1:09-bk-21621-KT
                                         )
15  MERUELO MADDUX - 845 S. FLOWER       )
    STREET, LLC,                         ) Chapter 11
16                                       )
            Debtor-in-Possession.        )
17                                       ) Judge:  Hon. Kathleen Thompson
                                         )
18                                       ) **DEBTORS' JOINT FIRST AMENDED**
                                         ) **DISCLOSURE STATEMENT AND**
19                                       ) **JOINT FIRST AMENDED PLAN OF**
                                         ) **REORGANIZATION**
20                                       )
                                         ) **Ex Parte Application Pending**
21                                       ) Date:  _____ __, 2010
                                         ) Time:  _____.m.
22                                       ) Ctrm:  "301"
                                         )       21041 Burbank Boulevard
23  In re                                )       Woodland Hills, CA 91367
                                         )
24  MERUELO CHINATOWN, LLC,              ) Case No. 1:09-bk-21622-KT
                                         )
25          Debtor and                   )
            Debtor-in-Possession.        )
26                                       )
                                         )
27                                       )
                                         )
28

                                -1-

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................2

    A.      OVERVIEW ..............................................................................2

    B.      EXHIBITS AND ADDITIONAL INFORMATION...............................4

    C.      HOLDERS OF CLAIMS ENTITLED TO VOTE ..............................6

    D.      VOTING PROCEDURES ............................................................8

    E.      CONFIRMATION HEARING.......................................................9

    F.      NOTICES ................................................................................9

II.     DEFINITION OF TERMS AND RULES OF INTERPRETATION...................10

    A.      DEFINITION OF TERMS ..........................................................10

    B.      INTERPRETATION OF TERMS AND COMPUTATION OF TIME .................20

        1.      Defined Terms ...........................................................20

        2.      Rules of Interpretation ................................................20

        3.      Time Periods..............................................................21

III.    DEBTORS BUSINESS AND OPERATIONS PRIOR TO THE FILING........................21

    A.      CORPORATE HISTORY OF THE DEBTORS AND THEIR MMPI
        DEBTOR AFFILIATES .............................................................21

    B.      NATURE OF THE BUSINESS OF THE DEBTORS AND MMPI.....................21

        1.      Debtor MM 845 S. Flower's Condominium Project....................23

        2.      The Chinatown Real Property .................................24

    C.      THE BUSINESS STRATEGY OF THE DEBTORS..............................24

    D.      PREPETITION CAPITAL STRUCTURE OF THE COMPANY.........................24

        1.      MMPI....................................................................24

        2.      Corporate Structure of MM 845 S. Flower, Chinatown and
        Other Related Debtors. ................................................25

IV.     EVENTS LEADING TO THE COMMENCEMENT OF THE CHAPTER 11
    CASES OF THE MMPI DEBTORS AND OF THE DEBTORS ......................26

V.      CHAPTER 11 EVENTS.................................................................27

# TABLE OF CONTENTS (cont.)

**Page**

A.  ADMINISTRATIVE ORDERS AND MATTERS ................................................ 27

    1.  Introduction.................................................................................... 27

    2.  The Cash Collateral Motion and Corresponding Orders ........................... 27

    3.  Motion for Relief from Stay ............................................................... 28

    4.  Summary of Claims Process, Bar Date and Claims Filed ......................... 28

    5.  Other Administrative Matters ............................................................. 29

B.  MM 845 S. FLOWER SALE MOTION ...................................................... 30

C.  THE CHINATOWN ADVERSARY PROCEEDING ........................................ 30

VI.  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ................ 31

A.  SUMMARY OF CLAIMS AND INTERESTS AGAINST EACH
    DEBTOR ............................................................................................ 32

B.  GENERAL PROVISIONS FOR TREATMENT OF CLAIMS AND
    INTERESTS ........................................................................................ 35

    1.  Unclassified Claims. ........................................................................ 35

    2.  Treatment of Classified Claims Against and Interests in MM
        845 S. Flower.................................................................................. 38

    3.  Treatment of Classified Claims Against and Interests in
        Chinatown...................................................................................... 67

VII.  MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN .................... 68

A.  OVERVIEW OF IMPLEMENTATION OF THE PLAN .................................... 68

B.  VESTING OF ASSETS.......................................................................... 69

C.  REORGANIZED DEBTORS BUSINESS OPERATIONS ................................. 69

D.  SALE OR REFINANCE OF ASSETS OF MM 845 S. FLOWER ...................... 69

E.  RETAINED CLAIMS AND DEFENSES AND RESERVATION OF
    RIGHTS ............................................................................................. 71

    1.  No Waiver and Retention of Claims and Defenses ................................. 71

    2.  Retention of Avoidance Actions.......................................................... 72

    3.  Unknown Retained Claims and Defenses / No Preclusion........................ 73

348329.5A [XP]    25293

# TABLE OF CONTENTS (cont.)

Page

F.    OBJECTIONS TO CLAIMS ...................................................................... 73

G.    MANAGEMENT OF THE REORGANIZED DEBTORS ..................................... 74

H.    DISBURSING AGENT ............................................................................. 75

I.    TEMPORARY ENFORCEMENT INJUNCTION .............................................. 75

    1.    Temporary Enforcement Injunction Regarding Canpartners Claim ........................................................................................... 75

    2.    Temporary Enforcement Injunction Regarding Mechanics Lien Claims .................................................................................... 76

    3.    Duration of the Temporary Enforcement Injunction ................... 77

J.    DISCHARGE OF THE DEBTORS AND INJUNCTION ..................................... 77

K.    NO LIABILITY FOR SOLICITATION OR PARTICIPATION ............................ 79

L.    LIMITATION OF LIABILITY ................................................................... 79

M.    CERTIFICATE OF ORGANIZATION ........................................................ 79

N.    OTHER DOCUMENTS AND ACTIONS ..................................................... 79

O.    CORPORATE ACTION .......................................................................... 80

P.    RETIREE BENEFITS ............................................................................. 80

VIII.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................................................................................................ 80

IX.    CONFIRMATION AND EFFECTIVE DATE CONDITIONS ............................... 82

A.    CONDITIONS TO CONFIRMATION ......................................................... 82

B.    CONDITIONS TO EFFECTIVE DATE ....................................................... 82

C.    WAIVER OF CONDITIONS .................................................................... 82

D.    EFFECT OF FAILURE OF CONDITIONS .................................................. 82

E.    VACATUR OF CONFIRMATION ORDER .................................................. 83

X.    CONFIRMABILITY OF PLAN AND CRAMDOWN ........................................ 83

A.    ACCEPTANCE .................................................................................... 83

B.    UNFAIR DISCRIMINATION AND THE FAIR AND EQUITABLE TESTS ................................................................................................ 84

-iii-

# **TABLE OF CONTENTS (cont.)**

**Page**

C. FEASIBILITY ........................................................................................................ 85

D. BEST INTERESTS TEST .................................................................................... 87

XI. VOTING AND DISTRIBUTIONS UNDER THE PLAN AND TREATMENT OF DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS AND INTERESTS ..................................................................................... 89

 A. VOTING OF CLAIMS AND INTERESTS ......................................................... 89

 B. METHOD OF DISTRIBUTIONS UNDER THE PLAN ..................................... 89

  1. Distributions Under the Plan ..................................................................... 89

  2. Timing and Methods of Distribution .......................................................... 90

 C. UNDELIVERABLE OR UNCLAIMED DISTRIBUTIONS ............................... 91

 D. DISPUTED CLAIMS AND ESTIMATIONS ..................................................... 91

  1. Treatment of Disputed Claims .................................................................... 91

  2. Distributions on Account of Disputed Claims Once They Are Allowed ...................................................................................................... 92

  3. Allowance of Claims Subject to Bankruptcy Code Section 502(d) ......................................................................................................... 92

 E. SETOFFS ............................................................................................................. 92

XII. CERTAIN RISK FACTORS TO BE CONSIDERED ........................................... 93

 A. CERTAIN BANKRUPTCY LAW CONSIDERATIONS .................................... 93

  1. Risk of Non-Confirmation of the Plan ....................................................... 93

  2. Risk of Non-Occurrence of the Effective Date ........................................... 93

 B. RISKS TO RECOVERY BY HOLDERS OF CLAIMS ...................................... 94

  1. Ability to Service Debt ............................................................................... 94

  2. Risks of Asset Disposition Delays .............................................................. 94

  3. Risks Related to Dependence on Key Personnel ........................................ 94

  4. Projected Financial Information ................................................................. 94

XIII. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN .................. 95

-iv-

348329.5A [XP]  25293

# TABLE OF CONTENTS (cont.)

**Page**

A.  CERTAIN UNITED STATES FEDERAL INCOME TAX
CONSEQUENCES TO THE DEBTORS ............................................................97

    1.  NOLs...........................................................................................................97

    2.  Limitation on NOL Carryforwards and Other Tax Attributes....................97

    3.  General Section 382 Limitation..................................................................98

    4.  Special Bankruptcy Exception....................................................................98

B.  CONSEQUENCES TO HOLDERS OF CERTAIN CLAIMS .............................99

    1.  Consequences to Holders of Allowed General Unsecured
Claims.......................................................................................................99

    2.  Consequences to Holders of Allowed Secured Claims ............................100

C.  DISTRIBUTION IN DISCHARGE OF ACCRUED INTEREST .......................101

D.  INFORMATION REPORTING AND BACKUP WITHHOLDING ..................101

E.  IMPORTANCE OF OBTAINING PROFESSIONAL TAX
ASSISTANCE ...................................................................................................101

XIV.  RETENTION OF JURISDICTION...................................................................102

XV.  MISCELLANEOUS PROVISIONS ..................................................................104

A.  EXEMPTION FROM TRANSFER TAXES.......................................................104

B.  PAYMENT OF STATUTORY FEES.................................................................104

C.  MODIFICATION OR WITHDRAWAL OF THE PLAN ...................................104

D.  GOVERNING LAW ..........................................................................................105

E.  FILING OR EXECUTION OF ADDITIONAL DOCUMENTS .........................105

F.  WITHHOLDING AND REPORTING REQUIREMENTS.................................105

G.  WAIVER OF RULE 7062 OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE .........................................................................105

H.  HEADINGS ......................................................................................................105

I.  EXHIBITS AND SCHEDULES ........................................................................105

J.  NOTICES ..........................................................................................................106

K.  SUCCESSORS AND ASSIGNS........................................................................106

-v-

# **TABLE OF CONTENTS (cont.)**

**Page**

L.  SATURDAY, SUNDAY OR LEGAL HOLIDAY ..............................................106

M.  POST-EFFECTIVE DATE EFFECT OF EVIDENCES OF CLAIMS OR INTERESTS................................................................................................106

N.  SEVERABILITY OF PLAN PROVISIONS........................................................107

O.  BALLOTING ....................................................................................................107

P.  NO ADMISSIONS OR WAIVER OF OBJECTIONS .......................................107

Q.  SURVIVAL OF SETTLEMENTS .....................................................................108

R.  POST-CONFIRMATION STATUS REPORT ....................................................108

S.  FINAL DECREE................................................................................................108

XVI.  ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN............................................................................................................108

A.  ALTERNATIVE PLANS OF REORGANIZATION .........................................108

B.  LIQUIDATION UNDER CHAPTER 7 OR CHAPTER 11 ...............................109

XVII. CONCLUSION AND RECOMMENDATION ...................................................109

-vi-

348329.5A [XP]    25293

# I.

## INTRODUCTION

Meruelo Maddux – 845 S. Flower Street, LLC ("MM 845 S. Flower") and Meruelo Chinatown, LLC ("Chinatown") (collectively, "Debtors") hereby propose the following combined Joint First Amended Disclosure Statement (the "Disclosure Statement") and Joint First Amended Plan of Reorganization (the "Plan") for the resolution of their outstanding claims and interests. The document you are reading is both the Plan of Reorganization and the Disclosure Statement. A disclosure statement describes the assumptions that underlie the Plan and how the Plan will be executed. The Bankruptcy Court has approved the form of this document as an adequate disclosure statement, containing enough information to enable parties affected by the Plan to make an informed judgment on the Plan.

All Holders of Claims and Interests are encouraged to read this Plan and Disclosure Statement in its entirety before voting to accept or reject the Plan. No materials, other than this document, the exhibits and schedules attached hereto or referenced herein, have been approved by the Court for use in soliciting acceptances or rejections of the Plan.

**THE DEBTORS BELIEVE THAT THE PLAN REPRESENTS THE BEST POSSIBLE RETURN TO HOLDERS OF CLAIMS. THE DEBTORS STRONGLY URGE YOU TO READ THE PLAN AND DISCLOSURE STATEMENT AND VOTE IN FAVOR OF THE PLAN.**

Notwithstanding anything herein to the contrary, all statements in this Plan and Disclosure Statement concerning the history of the Debtors' business, the past or present financial condition of the Debtors, transactions to which the Debtors were or are a party, or the effect of confirmation of the Plan on all of their creditors and claimants including secured creditors, unsecured creditors or equity security holders are attributable exclusively to the Debtors and not to any other party.

### A.    OVERVIEW

The Plan provides for the payment of the claims of all creditors in full. The Plan in MM 845 S. Flower (the "Flower Plan") will be funded either by the sale of condominium units in MM 845 S. Flower's 34 story luxury condominium tower (the "Project") through an auction followed

348329.5A5 [XP]    25293

1  by a subsequent conventional sale program for remaining condominium units (the "Sale Program"),

2  through the sale of the building as a whole, or through a refinance of the debt.

3       The Flower Plan includes several classes of secured claims, comprised of the claims of each

4  of MM 845 S. Flower's Mechanics' Lien Creditors and MM 845 S. Flower's lender, Canpartners

5  Realty Holding Company IV, LLC ("Canpartners"). The Flower Plan also includes a class of

6  general unsecured creditors, a class comprised of intercompany claims and a class for the equity

7  interests in MM 845 S. Flower. In the event the Flower Plan is funded through the Sale Program,

8  the claims of creditors will be paid in the order of the priority of such claims from the Net Sale

9  Proceeds (as defined herein) of the sale of individual condominium units. The Claims of the

10  Mechanics Lien Creditors will be paid first from such amounts, followed by the secured claim of

11  Canpartners and then the claims of general unsecured creditors. MM 845 S. Flower will use its

12  cash on hand, held in its Reserve Accounts (as defined herein) to make payments at the Effective

13  Date of the Plan to its Mechanic Lien Creditors of post-petition amounts owing to them. Such

14  funds will also be used to fund post-confirmation operations, marketing expenses and the payment

15  of interest on a monthly basis to Canpartners for the few months prior to the closing of the initial

16  condominium sales. As set forth in the Projections attached hereto as Exhibit "C", MM 845 S.

17  Flower has sufficient funds in these accounts to make such payments. The Mechanics Lien

18  Creditors are projected to be paid in full within a few months of the Effective Date and Canpartners

19  is projected to be paid within one year thereof. Each of the secured and unsecured classes will

20  receive interest following the Effective Date on their Allowed Claims until such claims are paid in

21  full. Furthermore, in the interest of moving this case to confirmation as quickly as possible, MM

22  845 S. Flower has proposed interest rates for each of the classes to receive interest under the Plan at

23  a rate that is greater than MM 845 S. Flower believes it could achieve through the contested

24  confirmation proceeding on this Plan but that it believes will accelerate the confirmation process

25  and adequately compensate Canpartners for any perceived risk associated with repayment through

26  the Debtor's proposed Sale Program.

27       In the event the Flower Plan is funded through a sale of the Project as a whole, or through a

28  refinance of the secured debt, such sale or refinance would occur on or before the Effective Date of

348329.5A5 [XP]   25293

1  the Plan and would result in a consensual plan as all Classes of Claims will be paid in full in cash at

2  the Effective Date and thus, will be unimpaired.  The Debtor believes that the Flower Plan is

3  feasible under either the Sale Program or the sale or refinance of the Project as a whole and will

4  select the option that provides the best recovery for MM 845 S. Flower, its creditors and equity

5  holder at or prior to the conclusion of the hearing on confirmation of the Flower Plan.

6      The Chinatown Plan includes two classes of claims, one comprised of the lien of

7  Canpartners on the Chinatown Real Property to the extent this constitutes a valid lien.  If the Court

8  determines in the Chinatown Adversary Proceeding that Canpartners is required to release its

9  existing Lien, Canpartners will not be a creditor of the Chinatown Estate and will not have a vote.

10  If it is determined in the Chinatown Adversary Proceeding that Canpartners is not required to

11  release its existing Lien, Canpartner's rights with respect to such Lien are unaltered by the

12  Chinatown Plan and Canpartners will not have a vote.  In the event MM 845 S. Flower elects to

13  pursue the Sale Program, and <u>only</u> in such event, Chinatown will provide a Separate Adequate

14  Protection Lien to Canpartners on the Chinatown Real Property to provide adequate protection for

15  the Sale Program.  No Ballot will be submitted to Canpartners or the Holder of Interests in the

16  Chinatown Chapter 11 Case since all such Holders are unimpaired and are deemed to accept the

17  Plan.  Chinatown's unsecured creditor class will receive payments of its claim with interest and this

18  claim will be paid in full within six months after the Effective Date of the Plan.  This class is

19  Impaired and will receive a Ballot.  Chinatown also has a priority tax claim which will be paid in

20  full on the Effective Date from Chinatown's cash on hand.

21      **B.    EXHIBITS AND ADDITIONAL INFORMATION**

22      Attached as Exhibits to this Plan and Disclosure Statement are copies of the following

23  documents:

24      •    Order of the Bankruptcy Court dated [ ], 2010 (the "Disclosure Statement Order"),

25  which, among other things, approved the Disclosure Statement and established certain procedures

26  with respect to the solicitation and tabulation of votes to accept or reject the Plan (Exhibit A);

27      •    Residential Marketing Agreement between MM 845 S. Flower and Kennedy Wilson

28  Auction Group, Inc. (Exhibit B);

-4-

348329.5A5 [XP]    25293

1 • MM 845 S. Flower's Projected Financial Information (Exhibit C);

2 • The Debtors' Unexpired Leases and Executory Contracts (Exhibit D)

3 • MM 845 S. Flower's Liquidation Analysis (Exhibit E);

4 • The Claims and Interests of the Debtors (Exhibit F);

5 • List of Administrative Expense Claims (Exhibit F.1 and F.5)

6 • List of General Unsecured Claims (Exhibit F.2 and F.6);

7 • List of Intercompany Claims (Exhibit F.3);

8 • List of Interests (Exhibit F.4 and F.7);

9 • The schedules of all transfers by the Debtors during the 90-day and one-year

10 avoidance periods (Exhibit G).

11 A Ballot for the acceptance or rejection of the Flower Plan is also submitted to the Holders

12 of Claims and Interests that are entitled to vote to accept or reject the Plan.

13 On [_____], 2010, after notice and a hearing, the Bankruptcy Court

14 entered the Disclosure Statement Order, approving the adequacy of the disclosure in this Plan and

15 Disclosure Statement as containing adequate information of a kind and in sufficient detail to enable

16 hypothetical, reasonable investors typical of the Debtors' creditors to make an informed judgment

17 whether to accept or reject the Plan. APPROVAL OF THIS DISCLOSURE STATEMENT DOES

18 NOT, HOWEVER, CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS

19 TO THE FAIRNESS OR MERITS OF THE PLAN. THE BANKRUPTCY COURT HAS NOT

20 YET CONFIRMED THE PLAN. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT

21 YET BINDING ON ANYONE. HOWEVER, IF THE BANKRUPTCY COURT LATER

22 CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTORS AND ON

23 ALL CREDITORS AND INTEREST HOLDERS IN THESE CHAPTER 11 CASES.

24 The Disclosure Statement Order, a copy of which is annexed hereto as Exhibit "A", sets

25 forth in detail the deadlines, procedures and instructions for voting to accept or reject the Plan and

26 for filing objections to confirmation of the Plan, and the applicable standards for tabulating Ballots.

27 In addition, detailed voting instructions accompany each Ballot. Each holder of a Claim entitled to

28 vote on the Plan should read this Plan and Disclosure Statement, the Disclosure Statement Order

348329.5A5 [XP]    25293

1    and the instructions accompanying the Ballot in their entirety before voting on the Plan. These

2    documents contain important information concerning the classification of Claims for voting

3    purposes and the tabulation of votes. No solicitation of votes to accept the Plan may be made

4    except pursuant to Section 1125 of the Bankruptcy Code.

5          C.    **HOLDERS OF CLAIMS ENTITLED TO VOTE**

6          Pursuant to the provisions of the Bankruptcy Code, only Holders of Allowed Claims or

7    Interests in Classes of Claims or Interests that are impaired and that are not deemed to have rejected

8    the Plan are entitled to vote to accept or reject a proposed Plan. Classes of Claims or Interests in

9    which the Holders of Claims or Interests are unimpaired under a Chapter 11 Plan are deemed to

10   have accepted the Plan and are not entitled to vote to accept or reject the Plan. Classes of Claims

11   or Interests in which the Holders of Claims or Interests will receive no recovery under a Chapter 11

12   Plan are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

13   For a detailed description of the treatment of Claims and Interests under the Plan, see Article VI of

14   this Plan and Disclosure Statement.

15         The Flower Plan provides for two alternative treatments for each claim. Under Treatment

16   1, the Flower Plan will be funded through the sale of individual condominium units and the

17   following Classes are impaired and, to the extent Claims in such Classes are Allowed Claims, the

18   Holders of such Claims will receive distributions under the Flower Plan and the Holders will be

19   entitled to vote to accept or reject the Flower Plan: Classes A-1, A-2, A-3, A-4, A-5, A-6, A-7, A-8,

20   A-9, A-10, A-11, A-12, A-13, A-14, A-15, A-16, A-17, A-18, A-19, A-20, A-21, A-22, A-23, A-

21   24, A-25, A-26, A-27, A-28, A-29, A-30, A-31, A-32, A-33, A-34, A-35, A-36, A-37, A-38, A-39,

22   A-40, A-41, B and C. Class D, the Class of Interests, and the Holders of such Interests are deemed

23   to accept the Plan, and are not entitled to vote.

24         Under Treatment 2, the Flower Plan will be funded through the sale of the Project as a

25   whole or the refinance of the secured debt on or before the Effective Date. In that case, all Classes

26   of Claims and Interests will be unimpaired and will be deemed to accept the Flower Plan. Since

27   under the Flower Plan, MM 845 S. Flower may elect either Treatment 1 or Treatment 2 at any time

28   prior to the conclusion of the Confirmation Hearing, all Holders of Allowed Claims in all Classes

348329.5A5 [XP]    25293

1  other than Class D shall be entitled to cast ballots to accept or reject the Flower Plan.  In the event

2  MM 845 S. Flower elects Treatment 2, no votes shall be counted as the Flower Plan will be a

3  consensual Flower Plan and such votes will be unnecessary.

4      The Chinatown Plan leaves the claim of Canpartners and the interests of MM-Ventures

5  unimpaired and they are deemed to have accepted the Chinatown Plan.  As a result, neither

6  Canpartners nor MM-Ventures is allowed to vote.  The Class of General Unsecured Claims in the

7  Chinatown Plan is impaired and, to the extent claims in that class (Class F) are allowed claims, the

8  Holder of such claims will receive distributions under the Chinatown Plan and the Holders will be

9  entitled to vote to accept or reject the Chinatown Plan.

10      As a condition to confirmation, the Bankruptcy Code requires that each Class of Impaired

11  Claims and Interests vote to accept the Plan, except under certain circumstances.  Section 1126(c)

12  of the Bankruptcy Code defines acceptance of a Plan by a Class of Impaired Claims as acceptance

13  by holders of at least two-thirds in dollar amount and more than one-half in number of Claims in

14  that Class, but for that purpose counts only those who actually vote to accept or to reject the Plan.

15  Thus, a Class of Claims will have voted to accept the Plan only if two-thirds in amount and a

16  majority in number actually voting cast their Ballots in favor of acceptance.  Under Section 1126(d)

17  of the Bankruptcy Code, a Class of Interests has accepted the Plan if Holders of such Interests

18  holding at least two-thirds in amount actually voting have voted to accept the Plan.  Holders of

19  Claims or Interests who fail to vote are not counted as either accepting or rejecting the Plan.  Thus,

20  acceptance of the Plan by the Impaired Classes of Claims listed above will occur only if at least

21  two-thirds in dollar amount and a majority in number of the Holders of such Claims in each Class

22  that cast their Ballots vote in favor of acceptance.

23      A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing,

24  that such acceptance or rejection was not solicited or procured in good faith or in accordance with

25  the provisions of the Bankruptcy Code.

26      If a Class of Claims entitled to vote on the Flower Plan rejects the Flower Plan, the Debtors

27  reserve the right to amend the Flower Plan or request confirmation of the Plan pursuant to Section

28  1129(b) of the Bankruptcy Code or both.  Section 1129(b) permits the confirmation of a plan of

348329.5A5 [XP]    25293

reorganization notwithstanding the non-acceptance of the plan by one or more impaired Classes of Claims or Interests. Under that Section, a plan may be confirmed by a Bankruptcy Court if it does not "discriminate unfairly" and is "fair and equitable" with respect to each non-accepting Class. For a more detailed description of the requirements for confirmation of a nonconsensual Flower Plan, see Article X of this Plan and Disclosure Statement.

In the event at least one Impaired Class of Claims votes to accept the Flower Plan (and at least one Impaired Class either votes to reject the Plan or is deemed to have rejected the Flower Plan), MM 845 S. Flower shall request the Bankruptcy Court to confirm the Flower Plan under the cramdown provisions of Section 1129(b) of the Bankruptcy Code.

**D.    VOTING PROCEDURES**

If you are entitled to vote to accept or reject the Flower Plan, or the Chinatown Plan, a Ballot is enclosed for the purpose of voting on the Flower Plan or the Chinatown Plan. If you hold Claims in more than one Class and you are entitled to vote Claims in more than one Class, you will receive separate Ballots, which must be used for each separate Class of Claims. Please vote and return your Ballot(s) to:

DANNING GILL DIAMOND & KOLLITZ LLP
2029 Century Park East, Third Floor
Los Angeles, CA 90067
Attention: Jessica Ramos

DO NOT RETURN ANY NOTES OR SECURITIES WITH YOUR BALLOT. TO BE COUNTED, YOUR BALLOT INDICATING ACCEPTANCE OR REJECTION OF THE PLAN MUST BE RECEIVED BY NO LATER THAN [_____] P.M., LOS ANGELES TIME, ON [_____], 2010. ANY EXECUTED BALLOT RECEIVED THAT DOES NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE FLOWER PLAN SHALL BE DEEMED TO CONSTITUTE AN ACCEPTANCE OF THE FLOWER PLAN, OR THE CHINATOWN PLAN, AS THE CASE MAY BE.

Any Claim in an Impaired Class as to which an objection or request for estimation is pending or which is scheduled by the Debtors as unliquidated, disputed or contingent and for which no proof of Claim has been filed is not entitled to vote unless the Holder of such Claim has

-8-

1    obtained an order of the Bankruptcy Court temporarily allowing such Claim for the purpose of

2    voting on the Plan.

3      If you are a Holder of a Claim entitled to vote on the Flower Plan or the Chinatown Plan

4    and did not receive a Ballot, received a damaged Ballot or lost your Ballot, or if you have any

5    questions concerning this Plan and Disclosure Statement, or the procedures for voting on the Plan,

6    please contact the Debtors' counsel at:

7      DANNING GILL DIAMOND & KOLLITZ LLP
  2029 Century Park East, Third Floor

8      Los Angeles, CA 90067
  Telephone: (310) 277-0077

9      Facsimile: (310) 277-5735

10     Attention: Jessica Ramos

11     **E.**  **CONFIRMATION HEARING**

12     Pursuant to Section 1128 of the Bankruptcy Code, the Confirmation Hearing will be held on

13   [_____], 2010 commencing at [_____] Los Angeles Time, before the Bankruptcy

14   Court, the Honorable Kathleen Thompson, Presiding. Courtroom 301, 21041 Burbank Blvd.,

15   Woodland Hills, California  91367.  The Bankruptcy Court may adjourn the Confirmation Hearing

16   from time to time without further notice except for the announcement of the adjournment date

17   made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

18     Any objection to confirmation must be made in writing and specify in detail the name and

19   address of the objector, all grounds for the objection and the amount of the Claim held by the

20   objector.  Any such objection must be filed with the Bankruptcy Court and served so that it is

21   received by the Bankruptcy Court, and the Debtors on or before _____ __, 2010 at __:__ _.m.

22   Los Angeles Time.  Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

23     **F.**  **NOTICES**

24     All notices, requests and demands hereunder to be effective must be in writing and unless

25   otherwise expressly provided herein, shall be deemed to have been duly given or made when

26   actually delivered addressed as follows:

27

28

348329.5A5 [XP]    25293

| DEBTORS AND REORGANIZED DEBTORS | COUNSEL TO THE DEBTORS AND REORGANIZED DEBTORS |
|---|---|
| Todd Nielsen, Esq.<br>General Counsel<br>MERUELO MADDUX PROPERTIES, INC.<br>761 Terminal Street<br>Building 1, 2nd Floor<br>Los Angeles, California 90021<br>Email: tnielsen@meruelomaddux.com | John J. Bingham, Jr.<br>John N. Tedford, IV<br>Julia W. Brand<br>DANNING, GILL, DIAMOND & KOLLITZ, LLP<br>2029 Century Park East, Third Floor<br>Los Angeles, California 90067-2904<br>Emails: jbingham@dgdk.com, jtedford@dgdk.com, jbrand@dgdk.com |

## II.

## DEFINITION OF TERMS AND RULES OF INTERPRETATION

### A.    DEFINITION OF TERMS

Unless otherwise defined herein, or the context otherwise requires, the following terms shall have the respective meanings set forth below:

*Administrative Claim*    means any right to payment constituting a cost or expense of administration of the Chapter 11 Case of a kind specified under Section 503(b) and entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the estates of the Debtors, any actual and necessary costs and expenses of operating the respective businesses of the Debtors, any indebtedness or obligations incurred or assumed by the Debtors, in connection with the conduct of its business, including, without limitation, all compensation and reimbursement of expenses to the extent Allowed by the Court under Section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the estate of the Debtors under Section 1930 of chapter 123 of Title 28 of the United States Code.

*Allowed Claim or Allowed Interest*    means a Claim against or Interest in the Debtors to the extent that
a.    a proof of the Claim or Interest
i.    was timely Filed and served upon the Debtors and no objection to the Claim or Interest is Filed within the time fixed by the Court for such objections;
ii.    is deemed Filed under applicable law (e.g., filed on the Schedules as noncontingent, nondisputed and liquidated) or pursuant to a Final Order of the Court and no objection to the Claim or Interest is Filed within the time fixed by the Court for such objections;
iii. is Allowed pursuant to subparagraph b of this definition; or
iv. is Allowed under the Plan.
b.    If the Debtors file an objection to a proof of Claim or Interest within a time fixed by the Court, the Claim or Interest shall be Allowed to the extent of

-10-

| | |
|---|---|
| | i.  any amount of such Claim or Interest to which the Debtors did not object; or |
| | ii. any amount otherwise authorized by Final Order or the Plan. |
| ***Allowed Class Claim*** | means an Allowed Claim in the particular Class described. |
| ***Allowed Class Interest*** | means an Allowed Interest in the particular Class described. |
| ***Allowed Mechanics Lien Claim*** | Means a Mechanics Lien Claim which is an Allowed Claim. |
| ***Allowed Priority Tax Claim*** | means a Tax Claim against the Debtors to the extent that<br>a.    a proof of the Tax Claim<br>    i.  was timely Filed and served upon the Debtors and no objection to the Tax Claim is Filed within the time fixed by the Court for such objections; or<br>    ii. is deemed Filed under applicable law (e.g., filed on the Schedules as noncontingent, nondisputed and liquidated) or pursuant to a Final Order of the Court and no objection to the Tax Claim is Filed within the time fixed by the Court for such objections; or<br>    iii. is Allowed pursuant to subparagraph b of this definition; or<br>    iv. is Allowed under the Plan.<br>b.    If the Debtors file an objection to a proof of Tax Claim within a time fixed by the Court, the Tax Claim shall be Allowed to the extent of<br>    i.  any amount of such Tax Claim to which the Debtors did not object; or<br>    ii. any amount otherwise authorized by Final Order or the Plan. |
| ***APN*** | means a county assessor's parcel number. |
| ***Ballots*** | means each of the ballot forms distributed with the Plan and Disclosure Statement to each Holder of an Impaired Claim or Impaired Interest (other than to Holders of Impaired Claims or Impaired Interests deemed to have rejected the Plan or otherwise not entitled to vote on the Plan), upon which is to be indicated, among other things, acceptance or rejection of the Plan. |
| ***Bankruptcy Code*** | means Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as in effect on the date hereof or hereafter amended if such amendments are made applicable to the Chapter 11 Case. |
| ***Bankruptcy Rules*** | means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of Title 28 of the United States Code, and local rules of the Court, as the context may require. |

348329.5A5 [XP]    25293

| | |
|---|---|
| ***Business Day*** | means any day on which commercial banks are open for business, and not authorized to close, in the City of Los Angeles, California, except any day designated as a legal holiday in Bankruptcy Rule 9006(a). |
| ***Canpartners*** | means Canpartners Realty Holding Company, IV LLC. |
| ***Canpartners Collateral*** | means, collectively, [1] the MM 845 S. Flower Real Property and [2] any and all cash in the City National Bank reserve accounts, account number 112950087, account number 112950060, and account number 1129515036, the East West construction draw account, account number 80360357. |
| ***Cash*** | means legal tender of the United States of America and equivalents thereof. |
| ***Chapter 11 Cases*** | means the Chapter 11 case of MM 845 S. Flower and the Chapter 11 Case of Chinatown. |
| ***Chinatown*** | means Meruelo Chinatown, LLC, a California limited liability company, a Debtor in Possession in Chapter 11 Case number 1:09-bk-21622. |
| ***Chinatown Adversary Proceeding*** | means the consolidated adversary proceedings pending before the United States Bankruptcy Court for the Central District of California (San Fernando Valley Division) as adversary proceeding numbers 1:09-ap-01435-KT and 1:09-ap-01437-KT. |
| ***Chinatown Real Property*** | means the real property located at 129 W. College Street, Los Angeles, California, APN 5409-007-003. |
| ***Claim*** | has the meaning set forth in Section 101(5) of the Bankruptcy Code. |
| ***Class*** | means a class of Claims or Interests designated pursuant to the Plan. |
| ***Clerk*** | means the Clerk of the Court. |
| ***Collateral*** | means any property or interest in property of the Debtors' Estates subject to a Lien to secure the payment or performance of a Claim as of the Petition Date, which Lien is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law or otherwise invalid or extinguishable under the Bankruptcy Code or applicable non-bankruptcy law, or deemed invalid by the Court in the Chinatown Adversary Proceeding. |
| ***Commencement Date*** | means September 3, 2009, the date on which the Debtors filed their petitions for relief commencing the Chapter 11 Cases. |

| | |
|---|---|
| *Confirmation* | means the conclusion of the Confirmation Hearing. |
| *Confirmation Date* | means the date on which the Confirmation Order is entered on the Docket. |
| *Confirmation Hearing* | means the hearing to consider confirmation of the Plan pursuant to Section 1128 of the Bankruptcy Code. |
| *Confirmation Order* | means the order entered by the Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code. |
| *Court* | means, (a) the United States Bankruptcy Court for the Central District of California (San Fernando Valley Division), having jurisdiction over the Chapter 11 Case; (b) to the extent there is no reference pursuant to Section 157 of Title 28 of the United States Code, the United States District Court for the Central District of California; and (c) any other court having jurisdiction over the Chapter 11 Case. |
| *Creditor* | has the meaning set forth in Section 101(10) of the Bankruptcy Code. |
| *Cure Payments* | means the distribution of Cash as, and to the extent, required for the cure of any and all leases and executory contracts pursuant to Section 365 of the Bankruptcy Code in connection with any assumed leases and executory contracts. |
| *Debtors* | means, collectively, Meruelo Maddux - 845 S. Flower Street, LLC and Meruelo Chinatown, LLC. |
| *Debtors in Possession* | means the Debtors in their capacity as debtors in possession in the Chapter 11 Cases pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. |
| *Disbursing Agent* | means the Person responsible for making distributions under the Flower Plan, including the Reorganized MM 845 S. Flower, or such Person(s) as the Reorganized MM 845 S. Flower may employ in its sole discretion, to serve as Disbursing Agent. |
| *Disclosure Statement* | means this combined Plan and Disclosure Statement, as may be amended, modified or supplemented from time to time. |
| *Disputed* | means, with reference to any Claim, or Interest, or any portion thereof, any Claim or Interest proof of which was timely and properly Filed and in either case or in the case of any Administrative Claim, Claim or Interest that is disputed under the Plan or as to which the Debtors have interposed a timely objection and/or request for estimation in accordance with Section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or determined by a Final Order, and any |

-13-

Claim or Interest proof of which was required to be Filed by Order of the Court but as to which a proof of claim or interest was not timely or properly Filed.

**Distribution**  means a distribution to a Holder of an Allowed Claim pursuant to this Plan.

**Docket**  means the docket in the Chapter 11 Cases maintained by the Clerk.

**Effective Date**  means the fifteenth day after the Confirmation Order in a form satisfactory to the Debtors shall have become a Final Order; which condition is waivable by the Debtors. If a stay of the Confirmation Order is in effect the Effective Date shall be extended to the first business day on which no such stay is in effect; provided, that in no event shall the Effective Date be later than one hundred twenty (120) days after the Confirmation Date; and provided further that the Court may extend the deadline for the Effective Date to occur following (a) submission of a stipulation signed by the affected parties or (b) notice and hearing on the Debtors' motion. For purposes of the Plan and the Disclosure Statement "as soon as practicable" shall mean within ten days of the date performance is otherwise due.

**Estate**  means the estates created in the Debtors' Chapter 11 Cases under Section 541 of the Bankruptcy Code.

**Federal Judgment Rate**  means the interest rate on federal judgments and is based on the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the first day on which the defendant is liable for interest. The Federal Judgment Rate was 0.45% for the week ended immediately prior to the Petition Date of the Debtors.

**File** or **Filed**  means filed with the Clerk in the Chapter 11 Case.

**Final Order**  means an order or judgment of the Court as entered on the Docket in the Chapter 11 Cases, or other court of competent jurisdiction, the operation or effect of which has not been stayed, reversed or amended, and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

**GAAP**  means Generally Accepted Accounting Principles in the United States of America as in effect on the date of this Plan, including those set forth in (i) the opinions and pronouncements of the Accounting Principles Board of the American Institute of Certified Public Accountants, (ii) statements and pronouncements of the Financial Accounting Standards Board, (iii) such other statements by such other entity as approved by a significant segment of the accounting

-14-

348329.5A5 [XP]    25293

profession and (iv) the rules and regulations of the SEC governing the inclusion of financial statements (including pro forma financial statements) in periodic reports required to be filed pursuant to Section 13 of the Exchange Act, including opinions and pronouncements in staff accounting bulletins and similar written statements from the accounting staff of the SEC.

**General Unsecured Claim**  means any Claim that is not an Administrative Claim, Priority Claim, Tax Claim, Intercompany Claim, or Secured Claim.

**Holder**  means the holder of a Claim or Interest.

**Impaired**  means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

**Insider**  has the meaning set forth in Section 101(31) of the Bankruptcy Code.

**Instrument**  means any share of stock, security, promissory note or other "instrument," within the meaning of that term, as defined in Section 9105(1)(i) of the UCC.

**Intercompany Claims**  means all Claims asserted by any of the MMPI Debtor(s) or Chinatown against MM 845 S. Flower.

**Interest**  has the meaning set forth in Section 101(16) of the Bankruptcy Code for "equity security."

**Lien**  has the meaning set forth in Section 101(37) of the Bankruptcy Code.

**Loan Documents**  means, collectively, any and all writings between a Debtor and a Creditor or any other entity, establishing, fixing or describing the terms and conditions of the debtor creditor relationship between the Debtor and the Creditor, regardless of form, title or substance.

**Local Bankruptcy Rules**  means the local rules of the Court, as applicable from time to time in the Chapter 11 Cases.

**Mechanics Lien Claim**  means the Claims of Creditors who have mechanic's liens rights against the MM 845 S. Flower Real Property.

**Mechanics Lien Claim Holder**  means the Holder of a Mechanics Lien Claim whether or not such Claim is Allowed.

**Mechanics Lien Holder Treatment No. 1**  means that the Holder of an Allowed Mechanics Lien Claim shall receive deferred cash payments over a period not exceeding one year from the Effective Date, unless sooner paid, in the aggregate amount of the Allowed Mechanics Lien Claim plus interest from the Effective

-15-

1  Date on the unpaid portion of such Allowed Mechanics Lien Claim at the rate and in the intervals described below. Interest shall accrue at

2  the rate of five percent (5%) per annum or as otherwise established by the Court.

3

4  The holder shall receive payment of the Allowed Mechanic's Lien Claim, plus accrued interest, out of Net Sale Proceeds from the sale of

5  condominium units in the Project, as follows: Claimant shall receive from the sale of condominium units in the Project its Pro Rata Share of

6  95% of the Net Sale Proceeds until the Allowed Prepetition Claim, plus accrued interest, is paid in full.

7

8  The Reorganized MM 845 S. Flower reserves the right to make payments to the Holder on account of the Allowed Mechanics Lien

9  Claim more frequently than monthly at no additional cost or penalty.

10  The payment obligations with respect to the Allowed Mechanics Lien

11  Claim shall be secured by the MM 845 S. Flower Real Property except as modified herein to provide for the release of the Holder's

12  Mechanics' Lien on individual condominium units as such units are sold with such Liens to be transferred to the Net Sale Proceeds of such

13  unit, without regard to whether the Holder receives payment from the Sale of such units. The Liens on the Net Sale Proceeds shall be

14  released upon payments of such proceeds to the Mechanics Lien Creditor.

15

16  The Debtor shall have the right to use the five percent of the Net Sale Proceeds retained by the Debtor to fund payments of interest to

17  Canpartners, operational expenses, model furnishing and marketing expenses, commercial condominium capital expenditures and

18  professional fees as set forth in the Projections (Exhibit "C" hereto).

19

**MM 845 S. Flower**  means Meruelo Maddux – 845 S. Flower Street, LLC, a Delaware

20  limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-21621.

21

22  **MM 845 S. Flower Real Property**  means the real property located at 705 W. 9th Street, (formerly known as 717 W. 9th Street or 845 S. Flower Street), Los Angeles, CA 90015,

23  APN 5144-021-044 except to the extent that the Court, may from time to time, order the release of a Creditor's lien or encumbrance on

24  parcels of the MM 845 S. Flower Real Property.

25  **MM Construction**  means Meruelo Maddux Construction, Inc., a California corporation,

26  and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13388.

27  **MM Management**  means Meruelo Maddux Management, LLC, a Delaware limited

28  liability company, and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13390.

-16-

348329.5A5 [XP]    25293

| | |
|---|---|
| ***MMPI*** | means Meruelo Maddux Properties, Inc., a Delaware corporation and a Debtor in Possession in a Chapter 11 Case number 1:09-bk-13356. |
| ***MMPI Chapter 11 Cases*** | means the jointly administered Chapter 11 Cases of the MMPI Debtors. |
| ***MMPI Debtors*** | means the 54 jointly administered Debtors, 788 S. Alameda, 905 8th Street, 2640 Washington Boulevard, Alameda Produce Market, MBP, Merco Group, Meruelo Farms, Meruelo Wall Street, MG 4th Street Center, MG 146 E. Front Street, MG 425 W. 11th Street, MG 620 Gladys Avenue, MG 1211 E. Washington Boulevard, MG 1308 S. Orchard, MG 1500 Griffith Avenue, MG 2001-2021 W. Mission Boulevard, MG 2040 Camfield Avenue, MG 2529 Santa Fe Avenue, MG 3185 E. Washington Boulevard, MG 5707 S. Alameda, MG Ceres Street Produce, MG Little J, MG Overland Terminal, MG Southpark, MM 3rd and Omar Street, MM 230 W. Avenue 26, MM 336 W. 11th Street, MM 420 Boyd Street, MM 500 Mateo Street, MM 555 Central Avenue, MM 817-825 S. Hill Street, MM 915-949 S. Hill Street, MM 1000 E. Cesar Chavez, MM 2415 E. Washington Boulevard, MM 5500 Flotilla Street, MM Constructions, MM Mission Boulevard, MMP 306-330 N. Avenue 21, MMP 760 S. Hill Street, MMP 1009 N. Citrus, MMP 1060 N. Vignes, MMP 1919 Vineburn, MMP 2131 Humboldt Street, MMP 2951 Lenwood Road, MMP 12385 San Fernando Road, MMPLP, MMP Ventures, National Cold Storage, Santa Fe & Washington Market, Santa Fe Commerce Center, and Wall Street Market, exclusive of MM 845 S. Flower and exclusive of Chinatown. |
| ***MMPLP*** | means Meruelo Maddux Properties, L.P., a Delaware limited partnership, and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13387. |
| ***MMP Ventures*** | means MMP Ventures, LLC, a Delaware limited liability company, and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13392. |
| ***MMP Ventures Property*** | means MMP Ventures equity interests in MM 845 S. Flower and Chinatown. |
| ***Net Sale Proceeds*** | means the proceeds from a sale of a condominium unit in the Project net of the following amounts: (a) broker's commissions and closing and transactional costs; (b) to the extent not previously funded, amounts necessary to fund a one-time reserve to cover six months of homeowners' association dues up to an aggregate amount of $883,170; (c) amounts necessary to fund on a monthly basis homeowners' association dues for unsold units, (d) amounts necessary to fund a warranty reserve of $10,000 for each unit sold; and (e) to the extent not previously funded, amounts necessary to provide a reserve to pay professional fees of the Debtor up to $200,000. |

348329.5A5 [XP]    25293

| | | |
|---|---|---|
| 1 | **Order** | means an order or judgment of the Court as entered on the Docket. |
| 2 3 | **Other Priority Claim** | means any Claim, other than an Administrative Claim or a Tax Claim, entitled to priority in right of payment under Section 507(a) of the Bankruptcy Code. |
| 4 5 6 7 | **Person** | means any individual, corporation, general partnership, limited partnership, limited liability partnership, limited liability company, association, joint stock company, joint venture, government or political subdivision, official committee appointed by the United States Trustee, unofficial committee of creditors or equity holders, or other entity (as defined in the Bankruptcy Code). |
| 8 | **Petition Date** | shall have the same meaning as Commencement Date. |
| 9 10 11 | **Plan** | means this combined disclosure statement and plan of reorganization as it may be amended or modified, from time to time, together with all addenda, exhibits, schedules, supplements or other attachments, if any. |
| 12 13 14 | **Postpetition Tax Claims** | means Administrative Claims and other Claims by a governmental unit for taxes against any of the Debtor (and for a reasonable rate of interest related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date. |
| 15 16 17 | **Priority Claim** | means an Allowed Claim entitled to priority under Sections 507(a)(3) through 507(a)(7) of the Bankruptcy Code, and includes Priority Tax Claims. |
| 18 | **Priority Tax Claim** | means any unsecured Claim of a governmental unit of the kind specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code. |
| 19 20 21 22 | **Pro Rata Share** | means a percentage equal to the unpaid Allowed Prepetition Claim (plus accrued interest) divided by the sum of all unpaid Allowed Claims (plus accrued interest) of equal priority and entitled to be paid out of the same Net Sale Proceeds, after payment of any claims of higher priority. |
| 23 24 | **Property Level Debtors** | means any MMPI Debtor which held title to real property on the Commencement Date, as well as Chinatown and MM 845 S. Flower. |
| 25 | **Reinstated** | shall have the meaning set forth in Section 1124(2) of the Bankruptcy Code. |
| 26 27 28 | **Reserve Accounts** | means any and all cash in the City National Bank reserve accounts, account number 112950087, account number 112950060 and account number 1129515036 and the East West Bank construction draw account, account number 803060357 or such other accounts that MM 845 S. Flower shall maintain from time to time after the Effective |

-18-

| | | |
|---|---|---|
| 1 | | Date. |
| 2 | ***Reorganized Chinatown*** | means Chinatown upon confirmation of its Plan or any Amended Plan or Plan or Reorganization. |
| 3 | | |
| 4 | ***Reorganized Debtors*** | means, collectively, Reorganized Chinatown and Reorganized MM 845 S. Flower. |
| 5 | ***Reorganized MM 845 S. Flower*** | means MM 845 S. Flower upon confirmation of its Plan or any Amended Plan or Plans of Reorganization. |
| 6 | | |
| 7 | ***Retained Claims and Defenses*** | means all causes of action and claims held by or capable of assertion by the Debtors or their Estates, including, without limitation, all avoidance actions, all Section 510 actions, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, and whether asserted or assertable, directly or derivatively, that the Debtors or their Estates could assert immediately prior to the Effective Date, but excludes all such causes of action, claims or defenses released, waived or extinguished by the Debtors pursuant to this Plan or a Final Order of the Bankruptcy Court. |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | ***Scheduled*** | means set forth on the Schedules filed by the Debtors in their Chapter 11 Cases. |
| 15 | | |
| 16 | ***Schedules*** | means the schedules of assets and liabilities filed by the Debtor pursuant to Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, including any amendments and modifications thereto through the Confirmation Date. |
| 17 | | |
| 18 | | |
| 19 | ***SEC*** | means the United States Securities and Exchange Commission. |
| 20 | ***Secured Claim*** | means any Claim secured by Collateral to the extent of the value of such collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of such setoff. |
| 21 | | |
| 22 | | |
| 23 | ***Separate Adequate Protection Lien*** | means a new Lien to be provided in favor of Canpartners on the Chinatown Real Property as of the Effective Date in the event MM 845 S. Flower elects Treatment 1 for Class A-41, the allowed Claim of Canpartners. |
| 24 | | |
| 25 | | |
| 26 | ***Service Level Debtors*** | means MMPI, MMPLP, MM Ventures, MM Construction, and MM Management. |
| 27 | ***Treasury Bills*** | means the United States Government Securities Treasury Bills with constant maturities as published in the Federal Reserve Statistical Release H.15 on the first business day of each January, April, July and |
| 28 | | |

-19-

1      October.

2  ***Unimpaired***          means with reference to a Class of Claims or Interests, that the Class is
3                            not Impaired. An Unimpaired Class is not entitled to vote on the Plan.

4  ***Voting Agent***        means the Debtors.

5  ***Voting Deadline***     means the date on which Ballots must be received by the Voting
6                            Agent. For purposes of the Plan, the Voting Deadline is
                             _____, 2010 at 4:00 p.m. Pacific Time, or, if the Voting
7                            Deadline is extended by Court Order, the latest date on which a Ballot
                             will be accepted.

8

9          **B.       INTERPRETATION OF TERMS AND COMPUTATION OF TIME**

10                 **1.       Defined Terms**

11         Any term used in this Plan and Disclosure Statement that is not defined in the Plan and

12  Disclosure Statement, either in Article II.A. (*Definitions*) or elsewhere, but that is used in the

13  Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy Rules, shall have the meaning

14  assigned to that term in the Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy

15  Rules, as the case may be.

16                 **2.       Rules of Interpretation**

17         For purposes of the Plan and Disclosure Statement: (a) whenever it appears appropriate

18  from the context, each term, whether stated in the singular or the plural, shall include both the

19  singular and the plural; (b) any contract, instrument, release or other agreement or document

20  entered into by the Reorganized Debtors in connection with the Plan and Disclosure Statement

21  which refers to "being in a particular form" or "on particular terms and conditions" means that such

22  document shall be substantially in such form or substantially on such terms and conditions;

23  provided, however, that any change to such form, terms, or conditions which is material to a party

24  to such document shall not be made without such party's consent or an order of the Court; (c) any

25  reference in the Plan and Disclosure Statement to an existing document or exhibit Filed or to be

26  Filed means such document or exhibit, as it may have been or (to the extent otherwise permitted,

27  hereafter) may be amended, modified or supplemented from time to time; (d) unless otherwise

28  specified in a particular reference, all references in the Plan to paragraphs, Articles and Exhibits are

1  references to paragraphs, Articles and Exhibits of or to the Plan and Disclosure Statement; (e) the

2  words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan and

3  Disclosure Statement in its entirety rather than to only a particular portion of the Plan and

4  Disclosure Statement; (f) captions and headings to Articles and paragraphs are inserted for

5  convenience of reference only and are not intended to be a part of or to affect the interpretations of

6  the Plan and Disclosure Statement; (g) the rules of construction set forth in Section 102 of the

7  Bankruptcy Code shall apply; and (h) all exhibits to the Plan and Disclosure Statement are

8  incorporated into the Plan and Disclosure Statement, and shall be deemed to be included in the Plan

9  and Disclosure Statement, provided that they are Filed no later than the commencement of the

10  Confirmation Hearing.

11          **3.**    **Time Periods**

12      In computing any period of time prescribed or allowed by the Plan, the provisions of

13  Bankruptcy Rule 9006(a) shall apply.

14  **III.**

15  **DEBTORS BUSINESS AND OPERATIONS PRIOR TO THE FILING**

16  **A.**    **CORPORATE HISTORY OF THE DEBTORS AND THEIR MMPI DEBTOR**

17          **AFFILIATES**

18      MMPI is the parent company of fifty-five companies which (along with MMPI) have filed

19  voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are two of

20  those Debtors.

21      MMPI was incorporated in 2006 under the laws of the State of Delaware, and is registered

22  with the California Secretary of State to do business in the State of California.  MM 845 S. Flower

23  was formed under the laws of the State of Delaware and is registered with the California Secretary

24  of State to do business in the State of California.  Chinatown was formed under the laws of the

25  State of California.

26  **B.**    **NATURE OF THE BUSINESS OF THE DEBTORS AND MMPI**

27      MMPI, together with its subsidiary operating partnership, MMPLP, and its affiliates and

28  related entities, is a self-managed, full-service real estate company that develops, redevelops and

-21-

1  owns industrial, commercial and multi-unit residential real properties primarily located in

2  downtown Los Angeles and other areas in southern California. The Company focuses on unique

3  properties that it believes have an alternate, more profitable use achievable through major

4  renovation, redevelopment or development. The Company's projects are predominantly located in

5  a densely populated urban, multi-ethnic environment and involve numerous local entitlement,

6  property assemblage and physical challenges.

7        The Company is committed to responsible property investing that has economic,

8  environmental and social benefits. Its development activities include urban infill projects that are

9  expected to meet the demands of urban communities and that utilize or upgrade existing

10  infrastructure instead of creating new infrastructure. The Company is known as a "smart growth"

11  developer, and many of the Company's projects are designed to locate businesses, customers and

12  employees close to each other and close to existing public transit systems. The Company is also

13  known as an "incubator" of new businesses, actively seeking development projects in

14  empowerment zones. The Company is very familiar with the social, cultural, business and political

15  issues of land development in Southern California, and especially the Los Angeles area.

16        The MMPI Debtors' current management team is led by Richard Meruelo, who serves as

17  MMPI's Chief Executive Officer and Chairman of MMPI's Board of Directors, and John Charles

18  Maddux, who serves as MMPI's President and Chief Operating Officer and a member of MMPI's

19  Board of Directors. Messrs. Meruelo and Maddux both have more than 20 years experience in

20  identifying, acquiring, entitling, financing, developing and redeveloping urban real estate. They

21  have worked together since 1987. The MMPI management team also manages Debtor MM 845 S.

22  Flower and Debtor Chinatown.

23        Currently, the Company owns in excess of forty discrete properties consisting in some cases

24  of a number of parcels; some of its parcels generate income and others are in various stages of

25  development. With approximately 80 acres of land, the Company is believed to be the largest non-

26  government land owner in downtown Los Angeles.

27

28

348329.5A5 [XP]    25293

1    ## 1.    Debtor MM 845 S. Flower's Condominium Project

2    MM 845 S. Flower owns a 34 story luxury condominium tower located at 705 W. Ninth

3    Street in Los Angeles, California, the Project. It purchased the property on July 11, 2005 and

4    thereafter commenced construction of the Project. Construction of the Project was funded by $73

5    million in funds provided by MMPI (which amount is included in Class C as an Intercompany

6    Claim) and an $84 million construction loan provided by Canpartners, the MM 845 S. Flower

7    lender. The Project is encumbered by a lien in favor of Canpartners and by the mechanics' liens of

8    the Mechanics' Lien Creditors. Located in the South Park region of downtown Los Angeles, the

9    property totals approximately 0.8 acres of land. The building is comprised of 214 luxury

10    residential condominium units totaling 254,300 square feet and a 6,800 square foot commercial

11    unit on the ground floor. MM 845 S. Flower obtained a temporary certificate of occupancy for the

12    Project. The 6,800 square feet of ground floor commercial space is well suited for a restaurant and

13    MM 845 S. Flower is in negotiations with a prominent Southern California restaurant operator.

14    The Project has an attractive location at the corner of Ninth and Flower Streets, which is (a)

15    across the street from the newly opened Ralph's supermarket, (b) a few blocks away from the LA

16    Live complex and the Staples Center, (c) on an all residential corner and (d) closer than most other

17    South Park residences to the class A office core of downtown Los Angeles. The building has

18    resident amenities that start at street level which include (a) a valet entrance area adjacent to the

19    lobby on Ninth Street, (b) two gated entrances that lead to above ground parking providing in

20    excess of one parking space for each one bedroom residence and two parking spaces for each two

21    bedroom residence, and (c) an efficient loading dock area for resident move-ins.

22    There is a seventh floor amenity level located on top of the six story parking facility. The

23    amenity level clearly separates this building from its residential neighbors with its stunning visuals

24    and common area space. This level contains (a) a gym that overlooks the pool complete with

25    changing rooms and showers, (b) an approximately 70 foot lap pool with infinity features, (c) a

26    Jacuzzi-type whirlpool, (d) a landscaped garden and (e) a club room. The club room amenities

27    include (a) a demonstration kitchen/catering area, (b) a Wii electronic gaming room, (c) a pool

28    table, and (d) several large flat screen TVs.

348329.5A5 [XP]    25293

1    This property represents the culmination of a specific project that has resulted in an iconic

2    residential tower geared towards high density urban in-fill and transit oriented development.

3         **2.      The Chinatown Real Property**

4         The subject property is owned by Chinatown.  It is encumbered by a lien in favor of

5    Canpartners.  Chinatown has asserted that this lien must be released upon MM 845 S. Flower

6    obtaining a Acceptable Temporary Certificate of Occupancy, (as defined in the Loan Documents

7    between MM 845 S. Flower and Canpartners).  Although MM 845 S. Flower obtained the

8    Acceptable Temporary Certificate of Occupancy, and demanded release of the lien, Canpartners

9    refused to do so and disputes its obligation to do so.  The dispute is the subject of the Chinatown

10   Adversary Proceeding.  The Chinatown Real Property is unimproved land located at 129 West

11   College Street in downtown Los Angeles.  It is comprised of one property totaling approximately

12   5.5 acres of land and has significant development potential.  The Chinatown Real Property was

13   appraised at $17,600,000 as of March 2008 for the benefit of Canpartners based upon about $80 per

14   land square foot.

15        **C.      THE BUSINESS STRATEGY OF THE DEBTORS.**

16        The business strategy for the Project has been to build and entitle the Project as

17   condominiums.  MM 845 S. Flower has researched and analyzed various approaches for

18   maximizing value at the Project and has determined that the best use of the Project to provide value

19   to MM 845 S. Flower, its creditors and equity holders is through a sale of the individual

20   condominium units in the Project or alternatively, for the sale of the Project as a whole.

21        The Chinatown Real Property is periodically generating interim operating revenue from

22   parking revenues from the film industry.  Chinatown intends to develop this property in the future

23   as a mixed-use development.

24        **D.      PREPETITION CAPITAL STRUCTURE OF THE COMPANY**

25             **1.      MMPI**

26        MMPI is structured as a taxable corporation under Subchapter C of the Internal Revenue

27   Code.  Approximately 52.2% of MMPI's stock (approximately 45,859,606 shares) is owned by

28   MMPI's directors and executive officers with Richard Meruelo owning the largest amount of

-24-

348329.5A5 [XP]    25293

1  shares (approximately 39,911,378). The other 47.8% of MMPI's stock is publicly owned and,

2  prior to April 2009, was traded on the NASDAQ stock exchange. The stock is presently trading on

3  the Over the Counter Bulletin Board.

4  *a.*   ***MMPI Initial Public Offering***

5  Prior to MMPI's formation in 2006, its predecessor business' management team was one of

6  only approximately thirteen designated groups participating in the California Urban Real Estate

7  ("C.U.R.E.") program sponsored by the State of California Public Employee's Retirement System

8  ("CalPERS"). CalPERS provided the predecessor business with capital through the C.U.R.E

9  program in the form of a revolving credit facility in the principal amount of $150 million. The

10  CalPERS credit facility was obtained through a single borrower and the funds were disbursed

11  among the entities collectively comprising the predecessor business.

12  Thereafter, MMPI was formed on or about July 5, 2006, and MMPLP was formed on or

13  about September 12, 2006, in anticipation of an initial public offering (the "IPO") of MMPI's

14  common stock. The formation transaction and the IPO were designed to allow MMPI to acquire

15  and continue the operations of its predecessor entities, pay down existing mortgage debt, pay off

16  the mezzanine loan facility from CalPERS, provide capital for future acquisitions, fund future

17  development costs, and establish a capital reserve for general corporate purposes. Between January

18  30, 2007, and February 14, 2007, MMPI consummated its IPO and sold to the public 45,550,000

19  shares of common stock at $10.00 per share. MMPI raised approximately $425.7 million, after

20  underwriting discounts but before expenses related to the IPO. A substantial portion of the

21  proceeds was used to pay off the debt owed to CalPERS. In addition, a portion of such funds were

22  used to provide funding for the Project.

23  **2.   Corporate Structure of MM 845 S. Flower, Chinatown and Other**

24  **Related Debtors.**

25  MMPI is the sole general partner of, and holds a 99.6% ownership interest in, MMPLP.

26  The remaining 0.4% limited partnership units are owned by certain members of MMPI's

27  management team who obtained their interests through the Long Term Incentive Plan available to

28  certain personnel as part of their compensation packages. MMPLP also owns 100% of the

-25-

1  membership interests in MMP Ventures.  MMP Ventures, in turn, owns 100% of the stock or

2  membership interests in MM 845 S. Flower Street and in Chinatown as well as the other Property

3  Level Debtors.

**IV.**

**EVENTS LEADING TO THE COMMENCEMENT OF THE CHAPTER 11 CASES OF**

**THE MMPI DEBTORS AND OF THE DEBTORS**

7          The MMPI Debtors filed their Chapter 11 cases on March 26, 2009 and March 27, 2009,

8  ("MMPI Debtors Petition Date").  Prior to the MMPI Debtor's Petition Date, the Company

9  experienced significant, recurring cash shortfalls from (a) operating activities, (b) recurring

10  investment activities such as carrying costs for interest payments, real estate taxes and unfunded

11  development expenditures, and (c) capital expenditures on existing rental properties.  Shortfalls in

12  operating capital had previously been funded by the refinance or sale of real property assets, and

13  the use of the proceeds for operating and reinvestment in the purchase of replacement real property

14  assets.  However, prior to the MMPI Debtors' Petition Date, the economic climate and associated

15  disruption in the debt and equity capital markets were extremely challenging for the Company.

16  The Company took significant steps in an effort to improve its financial position.  However, the

17  Company's efforts could not overcome the collapse of credit markets and the American banking

18  system that took place in the fall of 2008.  Because a number of the Company's loans secured by

19  real property had matured prior to the MMPI Debtor's Petition Date or were to mature soon

20  thereafter, the filing of lawsuits by two lenders, and the unwillingness of current lenders to extend

21  the terms of maturing loans on acceptable terms, the MMPI Debtors sought relief under Chapter 11

22  of Bankruptcy Code.  On or about March 30, 2009, Canpartners declared a default under its Loan

23  Agreement with MM 845 S. Flower asserting that the filing of the bankruptcy case by MMPI, the

24  guarantor of MM 845 S. Flower's obligations to Canpartners, constituted an event of default.  On

25  July 13, 2009, Canpartners notified MM 845 S. Flower it would accrue default interest on the loan

26  going back to March 30, 2009, the date Canpartners sent the Debtor the Notice of Default.  Further,

27  on July 22, 2009, Canpartners unilaterally imposed additional conditions on its consent to future

28  construction draw payments, which endangered the progress of the Project, which was nearing

1  completion.  While MM 845 S. Flower and Canpartners engaged in negotiations with respect to the

2  loan, it became clear that both MM 845 S. Flower and Chinatown needed to seek relief under the

3  Chapter 11 of the Bankruptcy Code to protect their assets for creditors, and as a result, MM 845 S.

4  Flower and Chinatown sought relief on September 3, 2009 under Chapter 11 of the Bankruptcy

5  Code.

6                                      **V.**

7                          **CHAPTER 11 EVENTS**

8  **A.     ADMINISTRATIVE ORDERS AND MATTERS**

9         **1.     Introduction**

10        On September 3, 2009, the Debtors filed their voluntary petitions for relief under Chapter

11  11 of the Bankruptcy Code.  Shortly after the commencement of the Chapter 11 Cases, the Court

12  held several hearings on emergency motions presented by the Debtors on a variety of matters.  The

13  Debtors obtained Orders of the Court, inter alia, (a) authorizing MM 845 S. Flower to use of cash

14  collateral (see below for more detail), (b) authorizing MM 845 S. Flower to employ and

15  compensate legal advisors, (c) establishing procedures for MM 845 S. Flower to ensure continued

16  provision of utility services; (d) limiting the scope of notice required; (e) extending the time to file

17  schedules and statement of financial affairs; and (f) setting a bar date for creditors and parties in

18  interest to file proofs of Claim and proofs of interest.  The Debtors' motion for joint administration

19  of the cases with the MMPI Debtors' cases was denied.  MM 845 S. Flower Street and Chinatown

20  continued to operate their business and manage their properties as debtors in possession pursuant to

21  Sections 1107 and 1108 of the Bankruptcy Code.

22        **2.     The Cash Collateral Motion and Corresponding Orders**

23        MM 845 S. Flower filed its Motion for Entry of Interim and Final Orders Authorizing

24  Debtor to Use Cash Collateral (the "845 S. Flower Cash Collateral Motion") seeking permission to

25  use the cash collateral of Canpartners.  Canpartners opposed the requested relief.  By its order

26  entered October 23, 2009, the Bankruptcy Court ruled in favor of MM 845 S. Flower and

27  authorized it to use the cash collateral of Canpartners on a final basis to pay the costs and expenses

28

348329.5A5 [XP]     25293

1   of construction of MM 845 S. Flower's condominium Project and to pay the first and second

2   installment of the Debtor's 2009-2010 real property taxes.

3           **3.        Motion for Relief from Stay**

4           Canpartners moved for relief from the automatic stay with respect to the real property and

5   condominium Project owned by MM 845 S. Flower located in the South Park area of downtown

6   Los Angeles. The initial hearing on that motion was held on January 8, 2010. The Court set a

7   continued hearing on the motion for February 5, 2010. The Court has continued this matter to

8   March 12, 2010 for an evidentiary hearing.

9           **4.        Summary of Claims Process, Bar Date and Claims Filed**

10          **a.        *Schedules and Statements of Financial Affairs***

11          On September 30, 2009 MM 845 S. Flower and Chinatown filed with the Court their

12  Schedules and Statements reflecting their assets, liabilities and financial affairs as of their

13  September 3, 2009 Petition Date. MM 845 S. Flower will file an amendment to its Schedules.

14          **b.        *Claims Bar Date***

15          On September 16, 2009, the Court entered orders in the Debtors' case (the "Bar Date

16  Order") establishing the general deadline for filing proofs of Claim against both Debtors. The

17  deadline established by the Court was October 30, 2009.

18          The Bar Date established the deadline for Claims, including Claims of governmental units,

19  but excluding certain other Claims, such as Claims based on the rejection of executory contracts

20  and unexpired leases as to which the bar date is the later of: (1) the applicable Bar Date; or (2) the

21  first business day that is at least thirty (30) calendar days after (a) the mailing of notice of the entry

22  of the order first approving the rejection of such contract or lease, (b) the mailing of notice of the

23  entry of an order or judgment avoiding a transfer, or (c) the date any relevant tax Claim first arises.

24  The Debtors provided notice of the Bar Date by mailing a notice of such Bar Date, to all of their

25  known creditors.

26          **c.        *Proofs of Claim and Other Claims***

27          A total of 26 Claims were filed against MM 845 S. Flower asserting Claims in the total face

28  amount of approximately $92,061,802. The Claims scheduled by MM 845 S. Flower and Claims

348329.5A5 [XP]    25293

1    filed by claimants in each Class is summarized in Exhibit "F" attached hereto. In addition, MM

2    845 S. Flower has approximately 21 pre-petition Mechanics Lien Claims[1] with Pre-Petition Claims

3    totaling approximately $3,020,342. Following the Claims Bar Date, MM 845 S. Flower conducted

4    a review of the Claims, the Schedules and its books and records and as a result of such review has

5    determined that an amendment to its Schedules is required to properly reflect the amount of the

6    claims of certain of MM 845 S. Flower's creditors and to add certain creditors to MM 845 S.

7    Flower's Schedules. MM 845 S. Flower will file amended Schedules. The forthcoming

8    amendments to the Schedules have also been incorporated into the Exhibits attached hereto. The

9    amounts listed on those exhibits represent the current state of MM 845 S. Flower's computation of

10    the Claims filed and scheduled, and do not reflect amounts which have been paid to date or which

11    MM 845 S. Flower has otherwise resolved through deposit or stipulation.

12       Two claims were filed against Chinatown in the total face amount of $84,000,100.

13    Following the Claims Bar Date, Chinatown determined that an amendment to its Schedules is

14    required to properly reflect the claims of certain of Chinatown's creditors and to add certain

15    creditors to Chinatown's Schedules. Chinatown will file Amended Schedules. The forthcoming

16    Amendments to the Schedules have also been incorporated into the exhibits attached hereto.

17       **5.    Other Administrative Matters**

18       Early in the case, the Debtors met with and were interviewed by the staff attorney and other

19    representative of the Office of the United States Trustee (the "US Trustee"). During the Case, the

20    Debtors have complied with certain requirements promulgated by that office with respect to the

21    filing of monthly operating and cash reports. On October 2, 2009 the Debtors appeared at the

22    Section 341(a) meeting of creditors conducted in their Chapter 11 Cases. The US Trustee

23    conducted the Section 341(a) meetings.

24       Various professionals have been retained and employed in the Chapter 11 Cases will be

25    paid pursuant to the terms of the Plan. Danning, Gill, Diamond & Kollitz, LLP has been employed

26

27    [1]   An additional nineteen Creditors assert mechanics' lien Claims against MM 845 S. Flower.
MM 845 S. Flower disputes that any sums are owing to those Creditors.

28